## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DOMINICK M.,** [1] | |
| **Plaintiff,** | |
| v. | **Case No. 3:22-CV-00737-SPM** |
| **COMMISSIONER of SOCIAL SECURITY,** | |
| **Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.[2]

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on June 17, 2020, alleging disability beginning April 12, 2020. (Tr. 221, 26). After holding an evidentiary hearing, ALJ denied the applications on June 8, 2021. (Tr. 20-38). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1.  Whether the ALJ erred by failing to comport with SSR 96-8p's requirement to resolve conflicts in the record given the divide between the ALJ's assessment of residual functional capacity ("RFC") and medical opinion in the record.

2.  Whether the ALJ erred by failing to comport with 20 CFR 416.920b(c) and SSR 96-8p by incorrectly treating the question of a medical opinion regarding the use of a support animal as reserved to the Commissioner and thus failing to address the consistent and supportable nature of that medical opinion.

## APPLICABLE LEGAL STANDARDS

To qualify for disability benefits, a claimant must be disabled within the meaning of the applicable statutes.  In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work

experience.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other work existing in significant numbers in the national economy.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) ([Under the five-step evaluation, an] "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  The scope of review is limited: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also*

Page 4 of 21

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Howeatver, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### THE DECISION OF THE ALJ

ALJ Werner followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. (Tr. 25). The ALJ found that Plaintiff had severe impairments of depression, anxiety, and alcohol abuse. (Tr. 26).

The ALJ determined Plaintiff had the RFC to work given some nonexertional limitations. (Tr. 28). The ALJ found that in performing his work, Plaintiff could understand, remember, and apply instructions to perform simple task as well as make work decisions commensurate with those tasks; concentrate at a consistent pace for two-hour periods; and can tolerate occasional interactions with the general public and occasional changes in a work environment. (Tr. 28).

The ALJ found that Plaintiff could not perform relevant past work as a Cashier II (DOT 211.462.010). (Tr. 32) (classifying the job as a light exertional level but as performed by Plaintiff at medium exterion). But the ALJ accepted the testimony of a vocational expert (VE) that there existed jobs in substantial numbers in the national economy that Plaintiff could perform, including bakery worker, mail clerk, and

routing clerk. (Tr. 32-33). The ALJ supported the finding that Plaintiff could perform these jobs by explaining that Plaintiff has a high school education, that transferability of skills is not at issue because the past relevant work was unskilled, and because Plaintiff's RFC non-exertional limitations were not totalizing. (Tr. 33). Therefore, the ALJ ruled that Plaintiff is not disabled and does not qualify for benefits. (Tr. 33-34).

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.

### I.   Agency Forms

Plaintiff was born in 1993, was 27 years old on the alleged onset date (Tr. 221). Plaintiff submitted a Work Function Report in September 2020. (Tr. 293, 300). Plaintiff wrote that he experienced severe panic attacks and bodily tremors as well as volatile swings of mood. (Tr. 293). Plaintiff has been hospitalized for his panic attacks at least once. (Tr. 293). He contended that he suffered from lack of sleep, constant fatigue, anxiety, had trouble focusing and maintaining attention, had problems with his memory, and suffers from irrational and racing thoughts. (Tr. 294, 297, 299). Plaintiff claimed that at some point in the past he was diagnosed with bipolar disorder. (Tr. 297). Plaintiff lived with his mother and dealt with his condition by taking daily medication regimen and through the help of his mother and a care worker. (Tr. 295). He did not cook, clean, or shop for himself. (Tr. 294-96). He took Amitriptyline (50 mg) for his problems with depression and lack of sleep. (Tr. 299).

He reported difficulty keeping track of money and could not drive due to frequent dizziness and drowsiness. (Tr. 296, 302). Plaintiff kept to himself and did not socialize, rarely leaving his house except to walk his dog whom he cared for deeply. (Tr. 294, 298).

## II.   Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing on March 31. 2021. (Tr. 41).

Plaintiff testified that he has a high school diploma but is just shy of the credits he needs to graduate with a college degree. (Tr. 44). He served in the Air Force Reserves but the Air Force discharged him for psychological reasons in February 2018. (Tr. 44). Beginning in late 2018 or early 2019 Plaintiff began working part time as a cashier at a college book store named 2020 Communications Inc. (Tr. 44). He worked at the bookstore about 20-30 hours a week earning an average $16/hour. (Tr. 46). Plaintiff left that job because panic attacks prevented him from working a full shift. (Tr. 48-49). In November 2019 Plaintiff worked at a marketing firm before a panic attack forced hime to leave. (Tr. 50). In April 2020 Plaintiff worked briefly at a temporary staffing agency. In June of 2020 Plaintiff took a job at Adventure HR and worked for only a few hours before was admitted to the hospital for a panic attack. (Tr. 49-50). Plaintiff is currently unemployed. (Tr. 51).

A vocational expert (VE) was present at the evidentiary hearing on March 31. 2021 and testified. (Tr. 41, 60). The VE classified Plaintiff's job at the bookstore as Cashier II (DOT 211.462-010). (Tr. 60). The VE described the job as light and unskilled with an SVP of 2. (Tr. 60).

The ALJ asked a hypothetical question which was supposed to correspond with the RFC assessment. (Tr. 60-61). The ALJ's hypothetical included the following conditions: a younger person with a high school education and the same work background as Plaintiff; the ability to lift/carry or push/pull 10 pounds frequently and 20 pounds occasionally; sitting to take normal breaks for six hours in an eight hour workday; understand, remember, and apply instructions to perform simple tasks; make decisions related to work tasks; concentrate to work at a consistent pace for two hour periods; tolerate occasional interactions with the general public; and adapt to occasional changes in a work environment. (Tr. 60-61). The ALJ did not include in his hypothetical any limitation on social interaction between Plaintiff and potential coworkers and supervisors. (Tr. 60-61). The VE testified that Plaintiff would not be able to perform his past work as it is generally performed in the national economy. (Tr. 61).

### III.  State Agency Assessments

In October 2020, state agency consultant Barbara Markway, Ph.D evaluated Plaintiff. (Tr. 82). She found Plaintiff's statements of symptoms consistent with his medical record and recorded a limitation in concentration and persistence, a moderate limitation working in close proximity to others, a moderate limitation completing a normal workweek without interruption from psychological symptoms and working at a consistence pace, a moderate limitation interacting with the general public, moderate limitations in responding appropriately to supervisors and interacting with coworkers, a moderate limitation in maintaining socially appropriate behavior, and moderate limitations in a variety of work adaptation issues.

(Tr. 82-85). In November 2020, Steven Akeson, Psy.D affirmed Dr. Markway's opinion. (Tr. 100).

ANALYSIS

In the interest of judicial economy, this Court only reaches issue one presented by Plaintiff as the Court finds such issue raises sufficient grounds upon which to remand this case for further proceedings.

The Commissioner conceded that when evaluating the persuasiveness of medical opinions or prior administrative findings, the ALJ has a duty to consider those sources' consistency and supportability. (Defendant's Br. 9-11). Rather, the Commissioner's contention was that the ALJ need not parrot the exact words of a medical opinion in crafting the determination of disability. (Defendant's Br. 11). The Commissioner argued that the ALJ's evaluation of evidentiary consistency and supportability will look much more to the forest than the tree. (*See* Defendant's Br. 15). That is, so long as the ALJ reasonably weighed the evidence in the record, this Court should affirm the Commissioner's finding. (Defendant's Br. 9). To the extent this line of argument questions whether the ALJ need address credible medical opinion as to moderate limitations, the answer is simple: It does.

It is true that an ALJ has latitude in their wording of an RFC—with the qualifier that "[such wording] conveys in some way the restrictions necessary to address a claimant's limitations." *Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021). However, the ALJ must include all limitations supported by credible medical evidence. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). All means *all*, an ALJ's RFC should reflect even moderate limitations supported by credible medical

evidence. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ's failure to account for moderate limitations in crafting an RFC can give rise to error. *See Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (ALJ found medical opinion credible but failed to include that opinion's moderate limitations in hypothetical questions to VE). While the Seventh Circuit had advised all limitations supported by credible evidence should be addressed in the RFC, it has a special concern with those moderate limitations that affect concentration, persistence, or pace. *See Lothridge*, 984 F.3d at 1233 (citing *Martin v. Saul,* 950 F.3d 369, 373–74 (7th Cir. 2020)). The *Martin* Court explained that difficulty concentrating and maintaining pace will frustrate an inference that plaintiff can perform unskilled work. This is because ". . . limiting a claimant to simple and routine tasks did not account for his concentration and functioning deficits." *Martin,* 950 F.3d at 373–74.

In this case, the medical evaluations that the ALJ found persuasive included moderate limitations. (Tr. 83-85); (Tr. 32) (noting that both medical evaluations appear consistent and supported by evidence). Among the ten listed moderate limitations, the medical evaluation specifically enumerates those involving work at a consistent pace and maintaining concentration. (Tr. 84). Because Plaintiff's limitations are not just moderate but moderate limitations relating to consistency and pace there can be no question that the ALJ had to account for them in his determination of the RFC. *See Lothridge*, 984 F.3d at 1233.

Commissioner's next argument asserts that the RFC encompassed those limitations to the extent that they existed. First, Commissioner argues that Plaintiff has mischaracterized the species of moderate limitation with respect to Plaintiff's

interaction with coworkers and as such has incorrectly concluded these limitations as excluded from the RFC. According to Commissioner, Dr. Markway and Dr. Akesons' evaluation defined a limitation of type rather than frequency. Rather than limiting the frequency of Plaintiff's interactions with coworkers, the doctors limited Plaintiff's work to simple tasks—contact with coworkers and supervisors being defined by the simplicity of the task. This argument fails.

The medical evaluations list moderate limitations in accepting instructions and responding appropriately to criticism from supervisors, the ability to get along with coworkers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior. (Tr. 84-85). More to the point, it lists a social interaction limitation and adaptation limitations. (Tr. 84). This Court has trouble plainly reading these restrictions to conclude the evaluation does not call for some moderate limitation in the frequency of interaction between Plaintiff and his coworkers and supervisors. If Plaintiff has a credible limitation preventing appropriate social responses and continual distraction of coworkers, how these limitations would be served by a limitation on type of work rather than frequency of interaction is less than clear. To some extent, the type of work and frequency of interaction intermingle. If Plaintiff is limited to a type of work that involves less frequent discourse with his coworkers and supervisors his frequency of contact has also been limited. This is to say that a division between a limitation on the difficulty level of work and frequency of interaction cannot be so neatly divided as the Commissioner suggests.

The Commissioner supports the argument that the medical evaluation is

limited to difficulty of task rather than frequency of interaction with coworkers and supervisors by citing the doctors' concurring finding that Plaintiff could "[i]nteract with supervisor[s] and peers as needed for task completions with *limited interpersonal demands* . . ." (Tr. 74, 103). But once more this limitation suggests a restriction in frequency of contact. Tasks with limited interpersonal demands suggest that Plaintiff would need to work in generally isolated workspace partitioned from unpredictable interactions with his coworkers. Instead, his workplace social contact must be narrowly constrained to specific tasks with social incidents being predictable and nonspontaneous. This remains a limitation on frequency of interaction. The problem for Commissioner is that the ALJ's RFC makes no mention of a limitation as to Plaintiff's interaction with his coworkers and supervisors. (Tr. 28). All that is mentioned is a limitation on Plaintiff's interaction with the general public. (Tr. 28). Commissioner's argument that the RFC encompassed the moderate limitation because the medical evaluations' limitation was as to type rather than frequency fails.

The Commissioner's makes a similar but slightly different argument that the ALJ's RFC accounted for the medical evaluator's moderate limitations because the composite limitations listed on the evaluation checklist are to be read exclusively. The Commissioner's argument is not without merit and might have been correct in other contexts, but the facts of this case support an inclusive reading and Commissioner's claim must fail.

The Seventh Circuit has found that a moderate functional limitations for the composite list of "concentration, persistence, and pace" should be construed to read that Plaintiff has a moderate limitation in at least one of those functional categories.

See *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) (citing 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(3)(f)). But the Seventh Circuit has also held that broad lists of functional categories should not be read as to make an *or* sound in the exclusive sense alone. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). In *Varga*, a plaintiff suffered from mental impairments like PTSD and depression and sought disability benefits. *See id.* at 811. The medical evaluator—whose opinion the ALJ found persuasive—marked moderate difficulties "in maintaining 'concentration, persistence, or pace" on the Section I of the MRFCA form. *Ibid.* Varga appealed on the grounds that the ALJ's hypothetical question to the VE did not include these moderate limitations. *See id.* at 813. The Commissioner argued that the RFC did account for all limitations because the hypothetical accounted for concentration and because the compound list "'concentration, persistence, or pace" did not include an *and*, the *or* must be exclusive (A or B, not both). *See Varga*, 794 F.3d at 813-15. But the Seventh Circuit rejected Commissioner's argument because *or* has an inclusive and exclusive sense, and the inclusive sense was the likelier meaning given that the medical evidence supported that plaintiff suffered difficulties in all three categories and the MRFCA's treatment of "concentration, persistence, or pace" as one broad category. *See id.* at 815-16 (Citing Garner Dictionary of Legal Usage, 3d ed. at 639). The facts of this case align with a *Varga* pattern more than they do with *Lockett*. In *Lockett*, the Circuit rejected an inclusive reading because the checkmark for the composite list of "concentration, persistence, and pace" was all that the plaintiff could point to as supporting a limitation on pace while the medical expert's own testimony suggested no pace limitations. *See Lockett*, 834 F. App'x at 239. Also notable in *Lockett*

is the ALJ's accounting for Plaintiff's limitations with respect to his social interactions with coworkers. *See id.* at 238. Here, the Commissioner analogizes the *Lockett* composite list to the checklist ratings in Section 1. (Def. Br. 14). For example, the checkmark indicating a moderate limitation for "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness" does not mean a limitation applies to each of the two verbal phrases. But the *Lockett* Court's holding was that the checkmark for a composite list indicated a moderate limitation *for at least one* of those limitations. It never held that the limitation must apply either/or as the Commissioner here suggests. Second, the Commissioner assumes this either/or limitation applied to the latter phrase "adhere to basic standards of neatness and cleanliness." (Def. Br. 14). If this were true it would certainly help color Plaintiff's appeal as an exercise in "nitpicking" as Commissioner suggests. (Def. Br. 15).  But the trouble is that the limitation to which the medical evaluator refers might just as well be one of "maintain[ing] socially appropriate behavior." *Varga* is here instructive. As in *Varga,* the composite list refers to an umbrella category of functioning. Cleanliness and hygiene are to be found within the greater ken of socially appropriate behavior. Those who cannot maintain basic hygiene will encounter difficulty socializing. This is to say that the category may be compound in form, but it is not so in substance. And also like *Vargas*, the medical evidence here supports a limitation around Plaintiff's social interactions with coworkers and supervisors. Multiple checklist limitations suggest Plaintiff's difficulty working frequently with and physically near to others including: "the ability to work in coordination with or in proximity to others without distracting them"; "social interactions limitations"; "the

ability to accept instructions and respond appropriately to criticism from supervisors"; and "the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 83-85). The MRFC narrative explanation describes limitations on "interpersonal demands". (Tr. 85). Both evaluators—whom the ALJ found persuasive—concurred in their assessment of these moderate limitations. (Tr. 74, 102-03). Dr. Hartz found similar moderate limitations. (Tr. 14-16). In fact, Dr. Hartz noted a *marked* limitation for "the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 16). This Court need not recite further medical evidence to support the proposition that there existed enough medical evidence for a moderate limitation on Plaintiff's social interactions with peers that a reasonable RFC must account for it.

The Commissioner makes a third argument that the ALJ's RFC encompassed the moderate limitations given by the medical evaluators because "moderate" amounts to "fair" or adequate and the ALJ's consideration of the medical evaluation's narrative assessment need only proceed at this low definitional standard. The commissioner's third argument fails.

It is true that a narrative assessment is often more useful than a checklist assessment, but an ALJ may not simply ignore a checklist assessment. See *Varga*,794 F.3d at 816. This is because a checklist assessment constitutes valid medical evidence where the ALJ finds the evaluation persuasive. *Ibid*. The Seventh Circuit has previously rejected a categorical approach that would allow the ALJ to exclude moderate limitations included in the checklist assessment based on an automatic presumption that the narrative adequately incorporated those limitations. See *Yurt*

*v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014). Instead, the ALJ's RFC will need to account for moderate limitations as legitimate medical evidence when the narrative fails to incorporate these limitations. *Compare Colvin*, 758 F.3d at 855-58 (rejecting hypothetical question to VE when the ALJ incorrectly assumed that the narrative assessment incorporated the checklist limitations); *with Varga*, 794 F.3d at 816 (checkmark moderate limitations must be included in RFC when the medical evaluation omitted a narrative assessment altogether). The Seventh Circuit has on occasion provided guidance as to when a narrative assessment has properly incorporated the checklist assessment. In *Pavlicek*, a plaintiff appealed the Commissioner's denial of SSI and DBI benefits on many grounds, one of which argued that the medical evaluator's checklist assessment contradicted its narrative assessment and as such the ALJ should have accounted for the checklist moderate limitations in crafting the RFC. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). This argument failed to convince the Circuit because "moderate" was understood to mean "fair" rather than bad or inadequate. *Ibid.* It followed then that the narrative assessment: "[Plaintiff has the] ability to perform simple, repetitive tasks at a consistent pace" did not contradict a moderate limitation in pace but simply translated that limitation. *Ibid.*

The Commissioner argues that on the instant facts the principles of *Pavlicek* must control. Because this Court agrees, it will first examine the extent to which the medical evaluation incorporated checklist ratings in the narrative assessment. *See Colvin*, 758 F.3d at 855-58. It will then examine whether the ALJ took notice of any unincorporated checklist assessments of limitation when crafting the RFC. *See*

*Pavlicek,* 994 F.3d at 783. Plaintiff alleged that the medical evaluation failed to incorporate checklist limitations into its narrative assessment with respect to limitations including completing a normal workday, working in proximity to others, accepting criticism from supervisors, and working around coworkers without distracting them. (Pl. Br. 10). Plaintiff is apparently referring to a series of checkmarks concerning his ability to interact socially with his peers and supervisors and a single checkmark: "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 73). The latter checkmark indicates a place for the examiner to explain the plaintiff's pace capacities and the evaluator indicates this is done in the narrative section. (Tr. 73). The narrative reflects a work limitation responding to Plaintiff's pace limitation. (Tr. 74). The concern for weekday interruptions is evidenced by the MRFC-A stipulation that procedures requiring a learning period be brief. (Tr. 74). MRFC-B aims directly at Plaintiff's pace restrictions by matching his limitations for concentration and persistence with tasks involving minimal variations (and impliedly taxing less reserves of concentration and less frustrating to challenges of pace). (Tr. 74). It is clear that the medical evaluator did incorporate restrictions on pace; Plaintiff's argument on this point fails. Plaintiff's argument that the evaluators narrative did not incorporate the checklist assessment for social interaction limitations also fails. As discussed above, MRFC-C provides for limited interpersonal demands and describes Plaintiff's interaction with peers to be only "as needed." (Tr. 74). A reasonable person could interpret this narrative assessment as incorporating the

checklist assessments.

It is at the second step of the *Pavlicek* analysis that Commissioner's argument fails. For Commissioner to succeed, the ALJ must have accounted for these limitations in its RFC. *See Pavlicek*, 994 F.3d at 783.  Here, the RFC made no mention of a limitation as to Plaintiff's interaction with his coworkers and supervisors; the only limitation placed on Plaintiff's social interactions are between him and the general public (Tr. 28). The Court looks for the ALJ's accounting for limitations on interpersonal demands and finds none. The Commissioner is right to suggest that the ALJ did astutely account for many and even most of Plaintiff's limitations. But the duty of the ALJ is to account for *all* limitations supported by credible evidence. *See Varga*,794 F.3d at 816.  The narrative assessment does not function as a sieve to filter out the limitations from the checklist. Because Plaintiff's social interaction limitations were not included in the ALJ's determination of the RFC, the Commissioner's argument fails.

The Commissioner's final argument on this issue is that even if the ALJ improperly excluded a limitation founded on credible medical evidence, that error was harmless because Plaintiff has failed to hypothesize restrictions that would satisfy the limitation and has not supported his claim with credible evidence from the record. (Def. Br. 13).  The Commissioners argument fails because it does not provide for judicial review of the burden shifting at step five where problems in the hypothetical posed to the VE trigger a much more categorical analysis.

An ALJ need only include limitations in the RFC determination that he finds credible. *See Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020). Because the ALJ

is in the best position to determine credibility, this Court will not disturb that finding unless "patently wrong." *Ibid*. But the ALJ is responsible for either incorporating all limitations derived from credible medical evidence or explaining why some limitations were omitted as premised on incredible evidence in the record. *See Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011). This responsibility runs to both the ALJ's RFC assessment and the hypothetical posed to the VE. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The question of harmless error, then, must contemplate the RFC assessment as well as the hypothetical. Harmless error analysis as to the RFC assessment proceeds as the Commissioner suggests. There, the burden is on the plaintiff to show the error is not harmless by hypothesizing additional restrictions that should have been included in the RFC and supporting this assertion with evidence. *See Morrison*, 806 F. App'x at 474. But the Seventh Circuit takes a different approach with respect to the hypothetical questions posed to the VE. At the fifth step, it is the ALJ's burden to provide evidence that the plaintiff can do other work that "exists in significant numbers in the national economy." See *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (citing 20 C.F.R. § 404.1560(c)(2)). The ALJ carries this burden by proposing hypothetical limitations on work derived from plaintiff's credible medical record to the VE who then testifies about the jobs that exist in the national economy satisfying that hypothetical. *Ibid.* For the ALJ to rely on the VE's testimony, the VE must be apprised of *all* relevant limitations based on credible evidence. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a near categorical rule: "Our cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).   The

single exception occurs when the VE independently reviewed the medical record *and* heard testimony regarding the plaintiff's limitations. *Ibid*. Generally, when an ALJ fails to orient a VE to the totality of limitations and the VE does not qualify for the safe harbor, it will be deemed unsupported by substantial evidence and vacated. *See Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). Unfortunately for Commissioner, the error at this fifth step prevents the Court from engaging in the typical harmless error analysis of the sort the Commissioner suggests.

The commissioner found the medical evaluations of Dr. Barbara Markway, Ph.D and Dr. Steven Akeson, Psy.D persuasive. (Tr. 32). The ALJ proposed a hypothetical to the VE of someone with a high school education and Plaintiff's work history that included limitations on the hours Plaintiff worked, the frequency of breaks, defined stretches of work at consistent pace for two hours, and occasional changes to the workplace as well as interactions with the public. (Tr. 60-61). Nowhere among these hypothetical limitations appear restrictions dealing with Plaintiff's difficulties interacting with peers and supervisors. (Tr. 60-61). A limitation on Plaintiff's interaction with the general public fails to suffice. (Tr. 61). The VE was present to hear Plaintiff's testimony and presumably heard testimony regarding his limitations. (Tr. 41). But because there is little in Plaintiff's testimony that would apprise the VE of his difficulties maintaining steady social contact and because the record does not make clear if the VE was provided the medical evidence in this case, the narrow exception cannot here apply. Therefore, this Court must treat the VE's testimony as unreliable because he was not apprised of the totality of plaintiff's limitations. *See O'Connor-Spinner*, 627 F.3d at 619. Because the ALJ relied upon this

unreliable testimony in making his ruling, he did so unsupported by substantial evidence and the case must be remanded. *See Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008); (Tr. 33).

The Court wishes to note that this Memorandum and Order should not be construed as indicating that this Court believes Plaintiff to be disabled, or that she is entitled benefits. The Court has not formed an opinion in that regard and leaves such issues to be determined upon further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for Disability Insurance Benefits and Social Security Income is **REVERSED** and **REMANDED** to the Commissioner for further proceedings not inconsistent with this decision.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED:  September 29, 2023**

<u>*s/ Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**